United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOWARD MCCONNELL, LEAF G. HELLMAN, ROBERT ATTEBERY, FRANKIE JOE MYERS, TERANCE J. SUPAHAN, MICHAEL T. HUDSON, BLYTHE REIS, and KLAMMATH RIVER KEEPER, a project of KLAMMATH FOREST ALLIANCE, a California corporation,<br><br>Plaintiffs,<br><br>v.<br><br>PACIFICORP INC., an Oregon Corporation,<br><br>Defendant. | No. C 07-02382 WHA<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS OR FOR JUDGMENT ON THE PLEADINGS AND DENYING MOTION TO STAY** |

**INTRODUCTION**

In this environmental-tort action, defendant PacificCorp, Inc., moves to dismiss for lack of jurisdiction and for judgment on the pleadings. Defendant also moves for a stay of proceedings. This order finds that defendant has established that federal law preempts plaintiffs' claims for injunctive relief, which are based on state law. Plaintiffs' claim for damages, however, may proceed. Finally, defendant has not established that the doctrine of primary jurisdiction warrants a stay of proceedings. For the below-stated reasons, defendant's motion to dismiss or for judgment on the pleadings is **GRANTED IN PART** and **DENIED IN PART**. Defendant's motion for a stay is **DENIED**.

**STATEMENT**

Defendant PacifiCorp is an Oregon corporation that owns and operates the Klamath Hydroelectric Project. This project uses river and creek water to produce electric power under Federal Energy Regulatory Commission License Number 2082. PacifiCorp owns and operates the Iron Gate, Copco 1, Copco 2, John C. Boyle, and Keno dams located on the Klamath River. PacifiCorp also operates Link dam on the Klamath River (Compl. ¶ 10; Ans. ¶ 5).

The Klamath watershed is home to the Yurok and Karuk Native American tribes. Plaintiffs Howard McConnell, Robert Attebury, and Frankie Joe Myers are members of the Yurok tribe. Plaintiffs Leaf Hillman and Terance J. Supahan are members of the Karuk tribe. Plaintiff Michael Hudson is a commercial fisherman. He is also president of the Small Boat Commercial Salmon Fishermen's Association and director of the Pacific Coast Federation of Fishermen's Associations. Plaintiff Blythe Reis co-owns and operates the Sandy Bar Ranch, which provides cabin rentals for visitors in the area. Plaintiff Klamath Riverkeeper is a nonprofit public benefit corporation organized under the laws of California. Members of Riverkeeper use the Klamath River for recreation and study (Compl. ¶¶ 2, 14–21).

Plaintiffs allege that defendant's conduct in operating the dams has polluted the Klamath River. They maintain that many of the dams raise water temperatures above natural levels, reducing dissolved oxygen to levels lethal to fish. Plaintiffs contend that these heightened temperatures promote the growth of blue-green algae (*Microcystis aeruginosa*) and an associated toxin, microsystin (Compl. ¶¶ 5–6).

Plaintiffs allege that these toxins have caused a number of harms specific to plaintiffs as well as harms to the general public. The pollution has allegedly exposed plaintiffs, their customers, and the public to microsystin, a potent liver toxin and tumor promoter. Plaintiffs allege that the pollution has also reduced the fishery population, jeopardizing the economic survival of fisherman. It has allegedly made the water unsightly and unsafe, and has reduced plaintiffs' property values (Compl. ¶¶ 5–7).

Defendant maintains that *Microcystis aeruginosa* is a common species of algae that is common in the Klamath River basin and in other watersheds throughout California and the world. While defendant admits that the algae may exist in the Iron Gate and Copco reservoirs during parts of the year, defendant contends that the algae also exists upstream of its project in, for example, Agency Lake and Upper Klamath Lake (Ans. ¶ 23).

Due to the alleged harms from defendant's operations, plaintiffs filed a complaint on May 2, 2007, alleging private nuisance, public nuisance, trespass, negligence, and unlawful business practices. Defendant filed an answer on June 19. This motion to dismiss was filed by defendant on July 12.

## ANALYSIS

**1. MOTION TO DISMISS OR FOR JUDGMENT ON THE PLEADINGS.**

### A. Claims for Injunctive Relief.

The Klamath Hydroelectric Project is subject to the Federal Power Act, which charges FERC with balancing the competing interests involved with such a project. *Am. Rivers v. FERC*, 201 F.3d 1186, 1201 (9th Cir. 2000). FERC issued a fifty-year license to defendant in 1954. *Cal. Ore. Power Co.*, 13 F.P.C. 1 (1954). Defendant filed for relicensing in 2004, and the first license has been extended pending the outcome of the relicensing proceedings. 69 Fed. Reg. 10,025 (FERC Feb. 26, 2004); 71 Fed. Reg. 13,834 (FERC Mar. 17, 2006). Relicensing proceedings are underway. Intervening entities in these proceedings include wildlife agencies, environmental organizations, commercial fishermen's associations, and Indian tribes (Request for Judicial Notice Exh. C at 1-3).

Defendant contends that plaintiffs' claims for injunctive relief are preempted by the Federal Power Act. FERC has stated that "[i]t is well-established that the FPA preempts all state and local law concerning hydroelectric licensing apart from those adjudicating proprietary water rights." PacifiCorp, Project No. 2342-018, 115 FERC ¶ 61,194, 61,696 (2006). Accordingly, defendant maintains that state law has no role, aside from the small exception regarding proprietary water rights, in the regulation of hydropower. The Supreme Court has

3

upheld the supremacy of the FPA over state law. *California v. FERC*, 495 U.S. 490 (1990); *First Iowa Hydro-Elec. Coop. v. FPC*, 328 U.S. 152 (1946). In interpreting the *California v. FERC* decision, the Ninth Circuit indicated that "[o]nce the [Supreme] Court made it clear that the state could control *only* proprietary rights to water, that established the category as 'occupy the field' preemption for everything but proprietary rights to water." *Sayles Hydro Assocs. v. Maughan*, 985 F.2d 451, 456 (9th Cir. 1993) (emphasis added). Defendant alleges that under the preemption doctrine, this Court lacks authority to grant injunctive relief under state law.

In the complaint, plaintiff seeks the following injunctive relief: "[A] permanent injunction directing PacificCorp . . . to cease operation of the Iron Gate and Copco dams and reservoirs in a manner that causes *Microcystis aeruginosa* blooms, discharges of toxins associated with the algae bloom, and discharges of water at temperatures and with dissolved oxygen concentrations harmful to fish and other aquatic species" (Compl. at 30). Plaintiffs also seek an injunction directing defendant to remediate the environmental impacts allegedly caused. The asserted basis for the injunctive relief, as with all the relief requested, is based on California state law. As discussed herein, plaintiffs' requests for injunctive relief are preempted by the FPA. Plaintiffs' injunctive relief claims fail because they impermissibly intrude on the comprehensive federal regulatory scheme for hydropower projects.[1]

Three key decisions establish the supremacy of the FPA over state law with respect to hydropower. *First Iowa* was the first decision by the Supreme Court recognizing federal preemption in this area. There, the petitioner sought to develop a hydroelectric project on the Cedar River in Iowa. The Federal Power Commission, predecessor to FERC, was willing to approve the project under the FPA, but Iowa intervened and sought to require the petitioner to comply with its requirement of a state permit. The FPC acceded to Iowa's demands and dismissed the federal license application without prejudice to reapplication upon a showing that

---

[1] In its briefing, defendant contends that the claims for injunctive relief could be dismissed either for lack of jurisdiction or federal preemption. This order finds the preemption issue dispositive and does not addresses the jurisdiction argument raised by defendant.

4

1  the petitioner had complied with Iowa law. On judicial review of the FPC's determination, the
2  Supreme Court held that the FPA preempted Iowa's requirements:

> To require the petitioner to secure the actual grant to it of a State permit under [Iowa law] as a condition precedent to securing a federal license for the same project under the Federal Power Act would vest in the Executive Council of Iowa a veto power over the federal project. Such a veto power easily could destroy the effectiveness of the federal act. It would subordinate to the control of the State the "comprehensive" planning which the Act provides shall depend upon the judgment of the Federal Power Commission or other representatives of the Federal Government.

*First Iowa*, 328 U.S. at 164. Aside from the express exception preserving state authority over "the control, appropriation, use or distribution of water in irrigation or for municipal or other uses of the same nature," the Supreme Court recognized that "the federal plan of regulation [left] no room or need for conflicting state controls." *Id.* at 175–76 (quoting 16 U.S.C. 821).

*California v. FERC* reaffirmed *First Iowa*'s holding that the FPA established a comprehensive federal regime, subject to a limited reservation of state authority. In *California v. FERC*, California sought to impose certain minimum-flow requirements on a FERC-licensed hydropower project, for the purpose of fish protection. The Supreme Court held (1) that Section 27 of the FPA, 16 U.S.C. 821, was a "reservation of limited powers to the States as part of the congressional scheme to divide state from federal jurisdiction over hydroelectric projects," and (2) that "California's minimum stream flow requirements neither reflect nor establish 'proprietary rights' or 'rights of the same nature as those relating to the use of water in irrigation or for municipal purposes.'" *California v. FERC*, 495 U.S. at 498 (quoting *First Iowa*, 328 U.S. at 176). The Supreme Court ultimately held that "[a]llowing California to impose significantly higher minimum stream flow requirements would disturb and conflict with the balance embodied in . . . considered federal agency determination." *Id.* at 506.

Finally, in *Sayles Hydro*, the Ninth Circuit applied *California v. FERC* to again hold that the FPA preempted the field of hydropower regulation. In that decision, the California State Water Resource Control Board sought to regulate the construction and operation of a FERC-licensed hydropower project by requiring additional reports and studies to assure that the

5

project satisfied the state board's various concerns. The state interference was declared invalid by the Ninth Circuit: "In the case at bar, it is clear that the federal laws have occupied the field, preventing state regulation. This conclusion is strengthened by the fact that most or all of the State Board's concerns were considered by the Federal Energy Regulatory Commission in granting the license, and conditions were imposed in the license to protect these multiple values." *Sayles Hydro*, 985 F.2d at 453, 456.

As in the above-cited decisions, the Klamath Hydroelectric Project is subject to the FPA, which gives FERC broad powers and exclusive licensing authority of the development and operation of non-federal hydroelectric projects on navigable waters. *California ex rel. State Water Res. Control Bd. v. FERC*, 966 F.2d 1541, 1549–50 (9th Cir. 1992). The FPA establishes an elaborate regulatory regime that charges FERC with responsibility for balancing "the interests of hydropower licensees and other participants in the licensing process." *Am. Rivers*, 201 F.3d at 1201. Section 4(e) of the Act provides that:

> In deciding whether to issue any license under this subchapter for any project, the Commission, in addition to the power and development purposes for which licenses are issued, shall give equal consideration to the purposes of energy conservation, the protection, mitigation of damage to, and enhancement of, fish and wildlife (including related spawning grounds and habitat), the protection of recreational opportunities, and the preservation of other aspects of environmental quality.

16 U.S.C. 797(e). Furthermore, an approved project

> shall be such as in the judgment of the Commission will be best adapted to a comprehensive plan for improving or developing a waterway or waterways for the use or benefit of interstate or foreign commerce, for the improvement and utilization of water-power development, for the adequate protection, mitigation, and enhancement of fish and wildlife (including related spawning grounds and habitat), and for other beneficial public uses, including irrigation, flood control, water supply, and recreational and other purposes referred to in section 797(e) of this title if necessary in order to secure such plan the Commission shall have authority to require the modification of any project and of the plans and specifications of the project works before approval.

16 U.S.C. 803(a)(1).

6

The FPA thus gives FERC broad discretion in constructing a "comprehensive plan for improving or developing a waterway." Pursuant to *First Iowa*, *California v. FERC*, and *Sayles Hydro*, operational changes to a particular program ostensibly arising out of *state* law are prohibited.

Plaintiffs contend that the requested relief is merely directed at halting pollution and would not involve imposing new operating conditions on the dams. Plaintiffs' argument, however, is belied by the plain language of the complaint. Plaintiffs' claims for injunctive relief here request changes in the operation of the dams. The complaint asks the Court to order defendant "to cease operation of the Iron Gate and Copco dams and reservoirs in a manner that causes *Microcystis aeruginosa* blooms" and other alleged environmental harms (Compl. at 30). In addition, in the opposition to the motion to dismiss, plaintiffs assert that "there are certainly ways that defendant can operate its dams without polluting the Klamath, without exposing people and fish to lethal toxins, without depleting a once thriving salmon population" (Opp. 11). It is clear that the request for a court order altering the operation of the dam runs afoul of *First Iowa*, *California v. FERC*, and *Sayles Hydro*. Under the above-cited authority, because plaintiffs' request for injunctive relief is grounded in state law, plaintiffs' claims for injunctive relief must be dismissed.[2]

Plaintiffs contend that the instant case is different from *Sayles Hydro*, *First Iowa*, and *California v. FERC* because those decisions involved a state agency trying to usurp federal authority. Plaintiffs' argument lacks merit. None of those binding decisions indicated that their holdings should be limited to instances where a state agency, rather than a private individual, was attempting to impede the federal regulatory scheme. What those decisions held was that *any* state law or regulation that "would be an obstacle to the accomplishment of the full

---

[2] It is of no moment that many of plaintiffs' claims are based in state common law. For preemption purposes, the Supreme Court has recognized "the phrase 'state law' to include common law as well as statutes and regulations." *Cipollone v. Liggett Group*, 50 U.S. 504, 522 (1992) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)).

7

1  purposes of the objectives of Congress in authorizing the Federal Energy Regulatory
2  Commission to license the project to proceed" should be prohibited. *Sayles Hydro*, 985 F.2d at
3  456. That plaintiffs here are private individuals rather than a public agency does not render
4  those decisions inapposite. It is clear that the injunctive relief requested here would impede on
5  FERC's authority to control the operation of the Klamath Hydroelectric Project.

For the foregoing reasons, defendant's motion for judgment as to the injunctive relief bust be granted.

### B. Claims for Monetary Relief.

While defendant maintains that the Court does not have authority over plaintiffs' claims for injunctive relief, defendant concedes that Congress preserved state-law damage remedies under 16 U.S.C. 803(c). As discussed, plaintiffs are not entitled to injunctive relief due to preemption by the federal regulatory scheme. The FPA, however, explicitly provides for a right to recover damages: "Each licensee hereunder shall be liable for all damages occasioned to the property of others by the construction, maintenance, or operation of the project works or of the works appurtenant or accessory thereto, constructed under the license, and in no event shall the United States be liable therefor." 16 U.S.C. 803(a). Moreover, "most courts to have considered the meaning of [this provision] have concluded that Congress intended simply to preserve any existing cause of action under state law." *See S.C. Pub. Serv. Auth. v. FERC*, 850 F.2d 788, 793–95 (D.C. Cir. 1988). This means that plaintiff must have a valid state-law claim to be entitled to damages. Defendant alleges that plaintiff has failed to state a claim for damages under California nuisance law or under California Business & Professions Code Section 17200.

#### (1) *Nuisance Claims.*

Defendant alleges that plaintiffs' nuisance claims are barred because the project is run pursuant to a government license — the FERC license that authorizes defendant to operate the Klamath Hydroelectric Project. California Civil Code Section 3482 provides that "[n]othing which is done or maintained under the express authority of a statute can be deemed a nuisance." The California Supreme Court has stated that Section 3482 applies when "it can be fairly stated

8

that the legislature contemplated the doing of the very act which occasions the injury." *Greater Westchester Homeowners Ass'n v. City of Los Angeles*, 26 Cal. 3d 86, 101 (1979) (quoting *Hassell v. San Francisco*, 11 Cal. 2d 168, 171 (1938)). In addition, "[a] requirement of 'express' authorization embodied in the statute itself insures that an unequivocal legislative intent to sanction a nuisance will be effectuated, while avoiding the uncertainty that would result where every generally worded statute a source of undetermined immunity from nuisance liability." *Greater Westchester Homeowners Ass'n*, 26 Cal. 3d at 101.

The Ninth Circuit has found that a property owner could not recover on a claim of nuisance where the defendant municipalities had discharged storm water pursuant to federal National Pollutant Discharge Elimination System permits. *Carson Harbor Village, Ltd. v. Unocal Corp.*, 270 F.3d 863, 888 (9th Cir. 2001) (en banc). Defendant maintains that operation of its project is done under the authority of the FPA, pursuant to a license issued by FERC. Defendant contends that the actions alleged here are necessarily implied by its license and thus protected by Section 3482. In particular, defendant alleges that the effect of the dams and water releases on anadromous fish is clearly covered by its license. *Cal. Ore. Power Co.*, 23 F.P.C. 59 (1959); *Pac. Power & Light Co.*, 29 F.P.C. 478 (1963).

This order disagrees with defendants. The nuisance claims are not barred because permits for the Klamath project did not have the requisite specificity to satisfy the requirements of Section 3482. The FERC license cannot be read to go as far as to demonstrate "an unequivocal legislative intent to sanction a nuisance." *Greater Westchester Homeowners Ass'n,* 26 Cal. 3d at 101. Defendant was authorized through the project to "maintain fishways" and construct "permanent fish trapping and egg collecting facilities" *Cal. Ore. Power Co.*, 13 F.P.C. 1 (1954); *Cal. Ore. Power Co.*, 23 F.P.C. 59 (1959). The California Supreme Court has explained that "although an activity authorized by statute cannot be a nuisance, the *manner* in which the activity is performed may constitute a nuisance." *Greater Westchester Homeowners Ass'n*, 26 Cal. 3d at 101. Here the pleadings allege that the *manner* in which defendant operated the dams has created a nuisance. Defendant was *not* permitted under the licenses to

9

1 raise water temperatures above natural levels and expose plaintiffs and the public to toxins
2 (Compl. ¶¶ 5–7). These alleged nuisances were not sanctioned by the licenses. This record
3 does not permit the conclusion that any and all ways to carry out the authorized activity must
4 necessarily raise water temperatures and create toxins. Section 3482 does not bar plaintiffs'
5 nuisance claims. This ruling is without prejudice to defendant raising a Section 3482 argument
6 at summary judgment on a more specific showing.

### (2) *Section 17200 Claim.*

California Business & Professions Code Section 17200 prohibits unfair competition. Plaintiffs allege a Section 17200 claim based on defendant's alleged violation of California Fish & Game Code Section 5650(a)(6), which prohibits the discharge into California waters of any substance deleterious to fish, plants, or birds.

Under Section 17200, plaintiffs are generally limited in their recovery to injunctive relief and restitution. *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1144 (2003). Accordingly, defendant argues that any claims under Section 17200 for damages are improper. Defendant further maintains that injunctive relief is improper on jurisdictional or preemption grounds, as discussed above. Defendant maintains that no remedies are available and judgment should be entered on its behalf with regard to the Section 17200 claim.

Plaintiffs agree that they are not entitled to restitution under the Section 17200 claim and that damages are not available to them under this claim (Opp. 13). Plaintiffs contend that they are, however, entitled to injunctive relief. This order disagrees for the reasons discussed above. There is a preemption bar to injunctive relief in this case. Accordingly, no relief can be awarded on plaintiff's Section 17200 claim, and judgment will be entered for defendant on this claim. *See Deitz v. Comcast Corp.*, No. C 06-06352 WHA, 2006 WL 3782902, at *5 (N.D. Cal. Dec. 21, 2006) (Alsup, J.) ("[Under Section 17200], if the court enters an injunction, then the court may also enter restitutionary relief. If, however, the court does not enter injunctive relief, then there is no occasion to consider ancillary relief in the form of an award of restitution.").

10

### 2. MOTION TO STAY.

Defendant also moves to stay this action pending licensing proceedings before FERC. In support of its motion, defendant invokes the doctrine of "primary jurisdiction." Primary jurisdiction "is a prudential doctrine under which courts may, under appropriate circumstances, determine that the initial decisionmaking responsibility should be performed by the relevant agency rather than the courts." *Davel Comm'ns, Inc. v. Qwest Corp.*, 460 F.3d 1075, 1086 (9th Cir. 2007). A "referral" under the primary-jurisdiction doctrine "means that a court either stays proceedings, or dismisses the case without prejudice, so that the parties may pursue their administrative remedies." *Syntek Semiconductor Co. v. Microchip Tech. Inc.*, 307 F.3d 775, 782 n.3 (9th Cir. 2002). The Ninth Circuit has explained that although "[n]o fixed formula exists for applying the doctrine of primary jurisdiction," courts traditionally look for four factors when applying the doctrine: "(1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory scheme that (4) requires expertise or uniformity in administration." *Davel Commn's*, 460 F.3d at 1086–87.

As stated, the injunctive relief requested by plaintiffs is preempted by federal law. Damages are the only remaining possible relief to be obtained by plaintiffs. This order holds that a stay of the damages claims is not warranted.

Defendant contends that the factual issues underlying plaintiffs' damages claims are being thoroughly examined in the FERC relicensing and related administrative proceedings. Defendant contends that FERC is examining, for example, the effects of the dams on water temperature, the extent algal blooms result in personal injury to humans as a result of downstream exposures, whether algal blooms from the Klamath Hydroelectric Project impair fish populations, and at what concentrations exposure to blue-green algae is toxic to humans. Defendant maintains that the expert views of FERC and its consultant federal and state agencies on these issues would inform proceedings on the damage claims.

11

Defendant's arguments are well-taken but unpersuasive. Defendant does not, and cannot, claim that any findings made by FERC would be binding on the ultimate factual determinations to be made by the jury herein. While such findings may be relevant and could even assist the experts herein, those findings could not take the place of the factual determinations to be made by the jury. Plaintiffs' claims for private nuisance, public nuisance, trespass, and negligence have not "been placed by Congress within the jurisdiction of an administrative body having regulatory authority." *Davel Commn's*, 460 F.3d at 1086–87.

Nor would this be a case where a decision on the merits would jeopardize "uniformity and consistency in the regulation of business entrusted to a particular agency." *Nader v. Allegheny Airlines, Inc.*, 426 U.S. 290, 303–04 (1976). A decision herein would simply be an application of the available facts to the relevant California state law. Defendant has not demonstrated how this would disrupt FERC's administrative proceedings.

Moreover, defendant has not demonstrated that the issues before the Court must be delayed pending the resolution of a lengthy administrative process. Defendant's initial application for relicensing was filed in February 2004. The contentious process could continue on for many years, and though defendant contends that the proceedings will be complete in the "foreseeable future," it declines to predict when a resumption of the instant proceedings would be appropriate. The Court declines to wait for what would amount to advisory findings by FERC at some unascertainable future date. Defendant's motion for a stay is denied.

## CONCLUSION

For the above-stated reasons, defendant's motion for judgment on plaintiffs' request for injunctive relief and plaintiffs' Section 17200 claim is **GRANTED**. The motion to dismiss or for judgment on the pleadings is otherwise **DENIED**. Additionally, the motion to stay proceedings is **DENIED**.

The Court takes judicial notice of items One through Seven of defendant's request for judicial notice, as well as the exhibits referenced in those items. The remaining items and exhibits were not necessary for the consideration of the issues raised in the instant motions.

**IT IS SO ORDERED.**

Dated: August 16, 2007.



WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

13