IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOWARD McCONNELL, LEAF G. HILLMAN; ROBERT ATTEBERY, FRANKIE JOE MYERS; TERANCE J. SUPAHAN, MICHAEL T. HUDSON, BLYTHE REIS, and KLAMATH RIVERKEEPER, a project of KLAMATH FOREST ALLIANCE, a California nonprofit corporation,<br><br>    Plaintiffs,<br><br>  v.<br><br>PACIFICORP, INC., an Oregon Corporation,<br><br>    Defendant.<br>_____/ | No. C 07-02382 WHA (Master File)<br><br>**ORDER PROVISIONALLY CONSOLIDATING RELATED CASES AND DENYING DEFENDANT'S MOTION TO DISMISS DUPLICATIVE SUIT** |
| KLAMATH RIVERKEEPER, a nonprofit public benefit corporation, HOWARD McCONNELL, LEAF G. HILLMAN, ROBERT ATTEBERY, and BLYTHE REIS,<br><br>    Plaintiffs,<br><br>  v.<br><br>PACIFICORP, INC., an Oregon Corporation,<br><br>    Defendant.<br>_____/ | No. C 07-06199 WHA |

**INTRODUCTION**

In this environmental-tort action, defendant PacifiCorp, Inc., moves to dismiss this action as duplicative of another action currently before this Court, *McConnell v. PacifiCorp,*

*Inc.*, C 07-02382 WHA. This order agrees that the current action is duplicative, but holds that consolidation of the two cases, rather than dismissal of the current action, is the appropriate relief. Accordingly, this order **DENIES** defendant's motion to dismiss this action, and consolidates the current action with C 07-02382 WHA, subject to the undertaking described below.

**STATEMENT**

Defendant PacifiCorp is an Oregon corporation that owns and operates the Klamath Hydroelectric Project. This project uses river and creek water to produce electric power under a federal license. PacifiCorp owns and operates the Iron Gate, Copco 1, Copco 2, John C. Boyle, and Keno dams located on the Klamath River. PacifiCorp also operates Link dam on the Klamath River (*McConnell v. PacifiCorp, Inc.*, Action No. C 07-02382 WHA, Dkt. 10 ¶ 5, 10).

The Klamath watershed is home to the Yurok and Karuk Native American tribes. Plaintiffs Howard McConnell and Robert Attebury are members of the Yurok tribe. Leaf Hillman is a member of the Karuk tribe. Blythe Reis co-owns and operates the Sandy Bar Ranch, which provides cabin rentals for visitors in the area. Klamath RIVERKEEPER is a nonprofit public benefit corporation organized under the laws of California. Members of RIVERKEEPER use the Klamath River for recreation and study (Compl. ¶¶ 2, 15–20; C 07-02382 WHA, Dkt. 1 ¶¶ 2, 14–21).

The basic allegation is that the dam operations pollute the Klamath River. The dams raise water temperatures above natural levels, which allegedly promotes the growth of blue-green algae (*Microcystis aeruginosa*) and an associated toxin, microsystin, or so it is alleged (Compl. ¶¶ 5–6; C 07-02382 WHA, Dkt. 1 ¶¶ 5–6). These toxins have allegedly caused a number of harms specific to plaintiffs as well as harms to the general public. The algae has allegedly exposed plaintiffs, their customers, and the public to microsystin, a potent liver toxin and tumor promoter. It has also allegedly reduced the fishery population, jeopardizing the economic survival of fishermen. And it has made the water unsightly and unsafe, and has reduced plaintiffs' property values, the complaint says (Compl. ¶¶ 5–9; C 07-02382 WHA, Dkt. 1 ¶¶ 5–7).

In the first action, defendant asserted that *Microcystis aeruginosa* is a common species of algae that is common in the Klamath River basin and in other watersheds throughout California and the world. While defendant admitted that the algae may exist in the Iron Gate and Copco reservoirs during parts of the year, defendant contended that the algae also exists upstream of its project in, for example, Agency Lake and Upper Klamath Lake (C 07-02382 WHA, Dkt. 10 ¶ 23).

### 1. THE FIRST ACTION: *MCCONNELL V. PACIFICORP, INC.*

On May 2, 2007, Howard McConnell, Leaf G. Hillman, Robert Attebery, Frankie Joe Myers, Terance J. Supahan, Michael T. Hudson, Blythe Reis, and Klamath RIVERKEEPER filed suit against PacifiCorp, Inc., for private and public nuisance, trespass, negligence, and unlawful business practices (C 07-02382 WHA). An order dated August 16, 2007, granted in part and denied in part defendant's motion to dismiss the first action (*id*. at Dkt. 15). The August 16 order dismissed the claims for injunctive relief, finding that the Federal Power Act preempted plaintiffs' state-law claims for injunctive relief, but allowed the claims for damages to proceed (*ibid*.). On the same day, a case management conference was held. In the parties' joint case management conference statement, plaintiffs stated their intent to seek leave to amend their complaint to assert a claim under the Federal Solid Waste Disposal Act, 42 U.S.C. 6901 *et seq.* (also known as the Resource Conservation and Recovery Act, "RCRA"), which would ripen on September 27, 2007 (*id*. at Dkt. 44). The case management order provided that leave to amend pleadings must be sought by September 27, 2007 (*id*. at Dkt. 48). Plaintiffs never sought leave to amend their complaint.

### 2. THE CURRENT ACTION: *RIVERKEEPER V. PACIFICORP, INC.*

On December 6, 2007, five of the eight *McConnell* plaintiffs, Klamath RIVERKEEPER, Howard McConnell, Leaf G. Hillman, Robert Attebery, and Blythe Reis, filed the instant action against PacifiCorp, Inc., for violations of the RCRA. On December 20, 2007, PacifiCorp moved to dismiss this action as duplicative of the *McConnell* action.

**ANALYSIS**

**1. DUPLICATIVE ACTION.**

Plaintiffs generally have "no right to maintain two separate actions involving the same subject matter at the same time in the same court and against the same defendant." *Adams v. Cal. Dep't of Health Servs.*, 487 F.3d 684, 688 (9th Cir. 2007). The Ninth Circuit articulated the test for determining whether a suit is duplicative in *Adams*: In order to determine whether an action is duplicative of an earlier-filed suit, a court must examine whether "the causes of action and relief sought, as well as the parties or privies to the action, are the same." *Id*. at 689.[1]

**A. Same Claims.**

In order to determine whether two successive claims are the same, the Ninth Circuit uses the transaction test, borrowed from the context of claim preclusion.[2] In applying the transaction test, the Ninth Circuit examines four criteria:

> (1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action;
>
> (2) whether substantially the same evidence is presented in the two actions;
>
> (3) whether the two suits involve infringement of the same right; and
>
> (4) whether the two suits arise out of the same transactional nucleus of facts.

The Ninth Circuit stated that the last criterion, whether the two suits arise out of the same transactional nucleus of facts, is the "most important." *Adams*, 487 F.3d at 689.

*(1) Arising From the Same Transactional Nucleus of Facts*.

Beginning with the fourth and most important criterion, as did the Ninth Circuit in *Adams*, the claims in both *McConnell* and the instant action arise from the same transactional

---

[1] Unless indicated otherwise, internal citations are omitted in all cites.

[2] It is of no moment that the *McConnell* action presented state-law claims, and the instant action presents federal-law claims under the RCRA. In *Adams*, the plaintiff brought both state-law and federal-law claims in both actions. In the Ninth Circuit's analysis, however, the issue was never addressed, and therefore is irrelevant in determining whether the claims are the same for the purpose of determining whether an action is duplicative.

4

nucleus of facts, namely that PacifiCorp's operation of the dams has polluted the Klamath River by raising water temperatures above natural levels and thereby promoting the growth of blue-green algae (*Microcystis aeruginosa*) and the associated toxin microsystin. Plaintiffs do not argue otherwise, and concede that "the transactional facts in [*McConnell*] and [the instant action] are substantially similar" (Opp. 4). This order thus finds that the two actions arise from the same transactional nucleus of facts.

### *(2) Rights or Interests Established in Prior Judgment Would Be Destroyed or Impaired by Second Action.*

The rights or interests adjudicated in each action could destroy or impair those in the other action, as both actions pertain to PacifiCorp's liability for allegedly polluting the Klamath River by raising water temperatures above natural levels and thereby promoting the growth of blue-green algae (*Microcystis aeruginosa*) and the associated toxin microsystin. Plaintiffs appear to argue that, because the legal tests for nuisance and imminent and substantial endangerment under the RCRA are not the same, the rights and interests of the parties in *McConnell* would be unaffected by adjudication of the RCRA claim in the instant action, and vice-versa. Different legal standards, however, do not control the inquiry, but rather whether they are the same rights or interests at issue in both actions. *Adams*, 487 F.3d at 690 (finding that rights and interests would be destroyed or impaired in related actions arising out of a disputed employment background investigation, where the same issues relating to the legality of reopening the plaintiff-employee's background investigation were raised in both actions, with no discussion of the differences between the legal theories in each action). For example, a finding that the dams run by PacifiCorp in fact contributed to the growth of blue-green algae and the associated toxin microcystin would be common to the causation elements of both the RCRA claims in the instant action as well as the nuisance causes of action in the *McConnell* action.

### *(3) Substantially the Same Evidence Presented.*

The evidence will be substantially the same in both actions, as the evidence in both actions will focus on the presence, causes, and effects of blue-green algae in the Klamath River. Plaintiffs concede that there will be "overlapping evidence . . . relating to concentration,

5

volume, and discharge locations of the *microcystin* algae and the associated toxin, as well as impacts to human health and the environment from those discharges" (Opp. 7). Additionally, the *McConnell* plaintiffs argued in their motion to consider whether the *McConnell* action and the instant action should be related that the evidence would be substantially similar in the two actions and thus the same judge should hear both cases (C 07-02382 WHA, Dkt. 60 (emphasis added)):

> Whether *Microcystis aeruginosa* and microcystin toxin are pollutants causing environmental degradation that is harming Plaintiffs is the central factual issue in each case. Thus, the Judge in each case will be presented with *substantially similar information* on these pollutants. . . . The legal issues presented in each case are unique. However, as explained above, the factual issues are so closely related that a factual determination in one case may conflict with a factual determination in a second case.

Thus, by plaintiffs' own concessions, as well as by the *McConnell* plaintiffs' explanation, it is clear that the evidence in the two actions will be substantially the same. The argument that the evidence required to prove the claims in each case will be substantially different is unpersuasive. The relevant inquiry is whether the evidence will be substantially the same, not whether the legal standards are the same, in the two actions. The argument that the standing and subject-matter jurisdiction requirements in each case will be different is likewise unpersuasive. Although standing and subject-matter jurisdiction must be established in each of the suits, such inquiries have little effect on the bulk of the evidence.

### *(4) Involving Infringement of the Same Right.*

The two actions involve infringement of the same rights, as both actions pertain to PacifiCorp's liability for allegedly polluting the Klamath River by operating dams that allegedly raise water temperatures above natural levels and thereby promote the growth of blue-green algae (*Microcystis aeruginosa*) and the associated toxin microsystin, as well as plaintiffs' and the public's right to a clean and uncontaminated river. This order finds plaintiffs' conclusory statements that, because the two actions involve different legal theories, the same rights are not at issue to be unpersuasive.

### B. Same Remedy.

In the *McConnell* action, plaintiffs sought both injunctive relief and money damages (C 07-02382 WHA, Dkt. 1). The August 16 order, however, dismissed the claims for injunctive relief, finding that the Federal Power Act preempted plaintiffs' state-law claims for injunctive relief (*ibid.*). In the instant action, plaintiffs seek both injunctive relief and civil penalties under the RCRA (Compl. at pages 20–21). Plaintiffs argue that, because injunctive relief is not available in the *McConnell* action, the remedies sought in the two actions are not the same. This argument is unpersuasive. A claim for injunctive relief began with the *McConnell* case and met its fate. That was via a court order. It is true that the *McConnell* action no longer portends injunctive relief, and that the current RCRA action was provoked by that circumstance (Opp. 5). This difference in available remedies weighs against dismissing the instant action and in favor of consolidating the two actions.

### C. Same Parties.

In the instant action, five of the eight *McConnell* plaintiffs brought suit against the same defendant, PacifiCorp. Although three of the *McConnell* plaintiffs are not parties to this suit, the parties are nonetheless the same for the purposes of claim preclusion because all of the parties to the instant action are parties to the *McConnell* action. Plaintiffs do not contend otherwise, and in fact the *McConnell* plaintiffs concede that the actions have the same parties (C 07-02382 WHA, Dkt. 60).

### 2. APPROPRIATE RELIEF.

Although the instant action is duplicative of the *McConnell* action, the question remains what is the appropriate relief. District courts have broad discretion to control their dockets. After determining an action is duplicative of an earlier-filed action, and after weighing the equities of the case, a district court may use its discretion to dismiss the later-filed action, to stay the action pending resolution of the previously-filed action, to enjoin the parties from proceeding with the later-filed action, or to consolidate both actions. *Adams*, 487 F.3d at 688.

Subject to the undertaking described below, this order will consolidate this action with the earlier-filed *McConnell* action and allow the RCRA claim to go forward. It is true that

counsel should have moved for leave to amend the *McConnell* complaint by September 27, as previously set forth in the August 16 case management order. After that date, leave to amend the complaint could still have been granted but only with a showing of good cause. At the hearing, plaintiffs' counsel candidly admitted that they dropped the ball and let the deadline pass, a result of miscommunication between the two firms handling the plaintiffs' case. Ordinarily, this oversight would weigh against allowing a new claim. But the first action has made only snail-like progress. No depositions have been taken. Counsel are still fighting over interrogatories. The difference between allowing the claim to be added now versus last fall is slight in terms of prejudice. Plaintiffs will stand by the existing case schedule. Because we cannot rule out the possibility of prejudice from the delay, however, plaintiffs' counsel (who admit the snafu was their fault) should be responsible for all reasonable defense costs and fees attributable to the delay. This does not mean they should pay all expenses for defending the new claim, but they should be responsible for all *incremental* costs and fees incurred *by reason of the two-and-a-half month delay*. The accounting for such costs and fees shall be at the end of the case. Defense counsel should keep records in such a way as to make the accounting practical. This obligation of counsel, of course, should not be traded off against any settlement achieved for the named plaintiffs.

    If within seven calendar days all plaintiffs' counsel sign and file a written undertaking to be jointly and severally responsible for all such incremental costs and fees attributable to the delay, then consolidation shall be allowed. One signature per plaintiffs' firm will be adequate. In that event, the new complaint shall be deemed consolidated with C 07-02382 WHA and defendant's answer or response thereto shall be due on March 13, 2008. In that event, the master file shall be C 07-02382 WHA and all filings should be made only in that action, and shall be deemed to apply in both actions, using the above caption for this order. If plaintiffs' counsel do not so agree, then this action shall be dismissed. The case schedule shall remain unchanged subject only to a motion to amend by the defense, which motion should be made, if at all, within 28 days.

**CONCLUSION**

For all of the above-stated reasons, defendant's motion to dismiss is **DENIED**. The instant action is hereby consolidated with C 07-02382 WHA, subject to the undertaking discussed above. This being provisional only, this order shall be filed in both actions.

**IT IS SO ORDERED.**

Dated: February 22, 2008.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE