IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOWARD MCCONNELL, LEAF G. HILLMAN, FRANKIE JOE MYERS, TERANCE J. SUPAHAN, MICHAEL T. HUDSON, and BLYTHE REIS,<br><br>Plaintiffs,<br><br>v.<br><br>PACIFICORP INC.,<br><br>Defendant. | No. C 07-02382 WHA<br><br>**ORDER DENYING DEFENDANT PACIFICORP'S MOTION FOR A RULE 16 CASE MANAGEMENT ORDER REQUIRING PLAINTIFF MICHAEL HUDSON TO MAKE A *PRIMA FACIE* SHOWING** |

**INTRODUCTION**

In this environmental-pollution action, plaintiffs are individuals and nonprofit corporation Klamath Riverkeeper who alleged that defendant corporation PacifiCorp erected dams on the Klamath River that harmed the surrounding river environment. The dams allegedly disrupt water flow and raise water temperatures, causing toxic algal bloom. As a result, plaintiffs are exposed to the toxins, and property values and fish stocks have dropped. The six remaining plaintiffs are: Howard McConnell, Leaf Hillman, Frankie Joe Myers, Terance Supahan, Michael Hudson, and Blythe Reis. PacifiCorp now moves pursuant to FRCP 16 for a case management order requiring plaintiff Michael Hudson to make a *prima facie* showing that PacifiCorp's conduct proximately caused him recoverable damages. For the reasons stated below, the motion is **DENIED**.

**STATEMENT**

Hudson is a commercial ocean fisherman who resides in Berkeley, California. He operates a commercial fishing vessel from Half Moon Bay, California, and his fishing range covers Point Sur to Fort Bragg. Hudson claims that the Klamath salmon fishery has been reduced because of PacifiCorp's contamination of the Klamath River. According to the complaint, "[t]he declines in Klamath River salmon has [sic] resulted in a reduced ocean salmon fishery population, and has caused Mr. Hudson to suffer economic loss and damages" (Compl. ¶ 19).

Along with the other individual plaintiffs and nonprofit organization Klamath Riverkeeper, Hudson filed suit against PacifiCorp on May 2, 2007. PacifiCorp now moves for a case management order requiring Hudson to make a *prima facie* showing that PacifiCorp's conduct proximately caused Hudson to suffer recoverable damages. PacifiCorp requests deferral of its obligation to incur the expense of retaining experts to prepare expert reports on Hudson's claims until Hudson has made such a showing.

**ANALYSIS**

Pursuant to FRCP 16(c)(2)(L), "[a]t any pretrial conference, the court may consider and take appropriate action on the following matters: [. . .] adopting special procedures for managing potentially difficult or protracted actions that may involve complex issues, multiple parties, difficult legal questions, or unusual proof problems." PacifiCorp contends that Hudson faces "unusual proof problems" with respect to the claim that PacifiCorp caused him to suffer damages. Hudson, on the other hand, opposes a case management order on the ground that PacifiCorp has failed to produce responsive documents. Hudson argues that PacifiCorp makes an unusual and improper request for a *prima facie* showing that should instead be made in a motion for summary judgment. This order agrees with Hudson.

Both parties concede that a district court has the discretion to request such a case management order under certain circumstances. The issue is not whether a court *can* require Hudson to make a *prima facie* showing; the issue is whether a court *should*. This order holds

that the circumstances justifying a case management order under FRCP 16(c)(2)(L) are not present in the instant action..

In *Claar v. Burlington Northern R. Co.*, 29 F.3d 499 (9th Cir. 1994), the plaintiffs belonged to a group of twenty-seven individuals who brought suit against their former employer, a railroad company. The plaintiffs alleged that they suffered from various illnesses stemming from exposure to chemicals while they worked out of their employer's shop. "Out of concern that plaintiffs might not be able to demonstrate a causal connection between their workplace chemical exposure and their injuries, the district court issued a case management order consolidating the twenty-seven cases for pretrial purposes. *All parties there agreed* to the issuance of the case management order, in contrast to the case here. *Eggar v. Burlington Northern R. Co.*, 1991 WL 315487, *11 n. 2 (D. Mont. 1991) (Battin, J.). The order required plaintiffs to submit affidavits describing their exposure to the chemicals they claim harmed them, and affidavits from physicians listing each plaintiff's specific injuries, the particular chemical(s) that in the physician's opinion caused each injury, and the scientific basis for the physician's conclusions." *Claar*, 29 F.3d at 500. Two doctors prepared affidavits for the plaintiffs. The district court found the affidavits deficient and ordered a second round of affidavits, requesting that the physicians explain the basis for their opinions. A month after receiving the second batch of affidavits, the defendant moved for summary judgment, arguing that the affidavits were inadmissible. The district court agreed, finding that the medical experts failed to show that they had arrived at their conclusions after using scientific methods and procedures. Summary judgment was granted because the plaintiffs failed to demonstrate a causal relationship between chemical exposure and their injuries. The Ninth Circuit affirmed. The *Claar* decision does not apply here because the issuance of the case management order was not disputed; rather, the parties disputed the admissibility of expert affidavits. There were also many more parties involved in the litigation, and discovery had concluded.

Defendant further cites *Abuan v. General Electric Co.*, 3 F.3d 329 (9th Cir. 1993), where plaintiffs allegedly exposed to toxic chemicals brought a class action against defendant manufacturers. They sought damages for the increased risk of future injury and the costs of

3

medical monitoring. The district court entered a case management order that required each plaintiff to file "medical and scientific opinions of experts, based on a reasonable degree of medical or scientific certainty and expressed in report form, supporting each claimant's claim that he or she was exposed to a sufficient level of PCBs, PCDFs and/or dioxins as a result of the Piti Power Plant incident to require future medical monitoring of said claimant and that such exposure placed claimant at increased risk of future injury, illness or disease." *Id.* at 331. This case had a similar procedural posture to that in *Claar* in that the district court found that the plaintiff's expert reports did not sufficiently demonstrate the requisite proximate cause. *Id.* at 332. *Abuan* dealt with a large class action. And again, the district court reached its conclusion at the summary judgment stage — after the parties had time to proffer evidence. Moreover, the district court did not require a *prima facie* showing.

PacifiCorp next relies on *Acuna v. Brown & Root Inc.*, 200 F.3d 335 (5th Cir. 2000), to show how other circuits have used similar case management orders to address complex tort litigation. *Acuna* had a much more difficult case-management situation. "[T]here are approximately one thousand six hundred plaintiffs suing over one hundred defendants for a range of injuries occurring over a span of up to forty years. Neither the defendants nor the court was on notice from plaintiffs' pleadings as to how many instances of which diseases were being claimed as injuries or which facilities were alleged to have caused those injuries. It was within the court's discretion to take steps to manage the complex and potentially very burdensome discovery that the cases would require." *Acuna*, 200 F.3d at 340. The district court therefore issued pre-discovery scheduling orders requiring plaintiffs to "certain elements" of their claims through expert affidavits. The plaintiffs then submitted over a thousand form affidavits from a single expert. A magistrate judge found that the affidavits did not comply with the scheduling order and gave plaintiffs another month to comply. The magistrate judge found that the additional round of affidavits still failed to meet the specificity requirements of the order and recommended that the case be dismissed. The district court dismissed the case, and the Fifth Circuit affirmed. Unlike the situation in *Acuna*, there are only six plaintiffs here. PacifiCorp only seeks a case management order with respect to *one plaintiff* and *one defendant*. The Fifth

4

Circuit in *Acuna* noted that the defendants and district court were not "on notice from plaintiffs' pleadings as to how many instances of which diseases were claimed as injuries or which facilities were alleged to have caused those injuries." *Id.* at 340. Here, Hudson has placed PacifiCorp on notice of his claims; he contends that PacifiCorp's alleged contamination of the Klamath River detrimentally affected the salmon fisheries, which in turn affected his ability pursue his livelihood.

Finally, defendants cite *Renaud v. Martin Marietta Corp.*, 749 F. Supp. 1545 (D. Colo. 1990). In *Renaud*, over thirty plaintiffs brought a toxic tort action against a missile manufacturer for contaminating the water. The district court held — on defendant's motion for summary judgment — that the plaintiffs failed to present a *prima facie* case of causation. The parties had engaged in years of discovery, and "[a]lmost every discovery request was hotly contested." *Id.* at 1547. The procedural posture leading up to plaintiffs' *prima facie* showing was as follows (*id.* at 1547–48):

> The Court also initiated a discussion concerning how to make significant progress in this protracted litigation. Both plaintiffs and defendants were of the opinion that something other than a full trial on all claims and all issues might be desirable, since a full jury trial would probably take between six and nine months to complete. Plaintiffs suggested that a "test" trial, in which a full jury trial would be held on all of the claims of three or four of the plaintiffs, would be most expedient. Defendants suggested that the most efficient way to proceed would be to hold an "issue" trial, in which only evidence concerning causation would be presented to a jury.
>
> After several status conferences and considerable discussion, it was determined that the most efficient procedure would be to hold a series of summary judgment proceedings. The centerpiece of these proceedings would be an evidentiary summary judgment hearing at which plaintiffs would present their prima facie case of causation as if they were presenting the case to the jury at trial. If the Court determined that plaintiffs had met their prima facie burden, then the Court would schedule a test trial in which all of the claims of one or two representative plaintiffs would be tried to a jury.

The situation in *Renaud* is therefore distinguishable from that in the instant action. In *Renaud*, there had been discovery, both parties agreed to the procedure proposed by the district court, and there were over thirty plaintiffs. Here, expert discovery has not started, PacifiCorp only seeks the scheduling order with respect to one plaintiff, and that plaintiff objects to the proposed

5

case management order. Nor did PacifiCorp request further specificity in the joint case management statement or during the case management conference. This order finds the aforementioned decisions to be inapposite. While the other cases presented situations with "unusual proof problems," that is not the case here.

PacifiCorp next argues that Hudson's discovery complaints do not make up for Hudson's evidentiary deficiencies. Citing *Acuna*, PacifiCorp says that a case management order requiring a *prima facie* showing only seeks "that information which plaintiffs should have had before filing their claims pursuant to Fed. R. Civ. P. 11(b)(3)." *Acuna*, 200 F.3d at 340. Again, PacifiCorp's argument is misplaced.[1]

This order assumes *arguendo* that the status of discovery is irrelevant given the considerations of FRCP 16(c)(2)(L), which contemplates "difficult or protracted actions that may involve complex issues, multiple parties, difficult legal problems, or unusual proof problems." Indeed, the decisions cited by PacifiCorp show the use of case management orders at varying stages of discovery. Nonetheless, they have all been illustrative of the circumstances under which a case management order was necessary to streamline massive, complex tort litigation. They involved significantly more plaintiffs and/or defendants, lengthier and more convoluted litigation histories, and/or the agreement of plaintiffs to the court's issuance of a special scheduling order. In the instant action, however, plaintiff Hudson has already placed PacifiCorp on notice of his claims against the corporation, and given the less-complex nature of Hudson's case, the proper time for evidentiary arguments is at the summary-judgment stage.[2]

---

[1] "By presenting to the court a pleading, written motion, or other paper — whether by signing, filing, submitting, or later advocating it — an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: [. . .] the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." FRCP 11(b)(3).

[2] A side discovery dispute has arisen regarding how "critical" are the documents Hudson seeks to obtain from PacifiCorp. Hudson contends that PacifiCorp has yet to produce requested documents that will "establish that Defendant's conduct has caused a decrease in the salmon population and had an averse [sic] impact on Hudson's commercial fishing business" (Opp. 4). PacifiCorp denies withholding any of the requested documents. Instead, PacifiCorp says that Hudson and the other plaintiffs "have [among other things] all the technical data collected by PacifiCorp and its consultants, and reports analyzing such data (as well as more such data and reports from the Yurok and Karuk Tribes, government agencies, and independent researchers)" (Reply 4). At this stage of the proceedings, this order will not hazard a guess as to the sufficiency of discovery

6

Finally, PacifiCorp maintains that Hudson's opposition reveals Hudson's unusual and difficult proof problems. Hudson states in his opposition, "By isolating upstream spawning habitat, raising temperatures, changing flow regimes, creating toxic algae blooms, and generating disease, the Copco and Iron Gate dams cause serious, documented harms to the Klamath salmon runs and the fishermen who depend on them" (Opp. 4). Essentially Hudson concedes that there are numerous possible reasons for the decreased salmon population, PacifiCorp says. As stated, this is not the same as the "unusual proof problems" described Ninth Circuit (and other courts, for that matter). The other decisions had to deal with large, unwieldy cases with many more parties, and/or the agreement of plaintiffs to a special scheduling order. Here, there are only six plaintiffs and one defendant. Hudson pointed to his specific claims against PacifiCorp in the complaint. It is true that Hudson must adequately prove causation to prevail on his claims. The question of whether plaintiffs has presented enough evidence to show causation, however, is more properly resolved on summary judgment, after sufficient discovery.

**CONCLUSION**

For the foregoing reasons, PacifiCorp's motion for a case management order is **DENIED**. As this order has emphasized, the issues raised in defendant's motion should be addressed at summary judgment. This order notes that, at the hearing for PacifiCorp's Rule 16 motion, plaintiffs specifically invited PacifiCorp to bring a motion for summary judgment. Plaintiffs are cautioned against further delays, as they should have enough evidence at this point to articulate a theory of harm and causation.

**IT IS SO ORDERED.**

Dated: June 12, 2008.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

---

produced or whether Hudson has failed to show causation. This matter should be resolved either through a proper discovery motion or through a motion for summary judgment.

7