IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOWARD MCCONNELL, LEAF G. HELLMAN, ROBERT ATTEBERY, FRANKIE JOE MYERS, TERANCE J. SUPAHAN, MICHAEL T. HUDSON, BLYTHE REIS, and KLAMMATH RIVER KEEPER, a project of KLAMMATH FOREST ALLIANCE, a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>PACIFICORP INC., an Oregon Corporation,<br><br>Defendant. | No. C 07-02382 WHA<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO RECOVER COSTS AND ATTORNEY'S FEES ASSOCIATED WITH THE SECOND DEPOSITIONS OF PLAINTIFFS** |

**INTRODUCTION**

After defendant conducted second depositions with four plaintiffs, defendant filed the instant motion seeking recovery of costs and attorney's fees associated with the second depositions, which motion is in part **GRANTED**.

**STATEMENT**

At a hearing on February 21, this Court ordered defendant to begin taking depositions. This order was prompted by seemingly interminable delays and squabbles among counsel in moving this case to the completion of discovery. The Court then stated that if defendant was required to take second depositions because plaintiffs did not timely produce responsive documents, plaintiffs would have to bear the expense of the second round of depositions

(discovery hearing Tr. 14-16, Feb. 21, 2008) (see also supplemental order to order setting initial case management conference ¶ 19) . This was done to provide an incentive to the deponents and their counsel to stop stalling and to meet their document-production obligations. The Court set deposition dates in early March for the four plaintiffs at issue in this motion: Michael Hudson, Howard McConnell, Terance Supahan, and Blythe Reis. The Court granted permission for the parties to stipulate around those dates (Tr. 12).

Michael Hudson was deposed for the first time on March 11, 2008. Hudson is claiming defendant injured his commercial fishing business. On October 19, 2007, defendant requested documents showing Hudson's expenses and net income for his commercial fishing business (Raushenbush Decl. in Support of Motion ¶ 3). Hudson produced some of those documents to his counsel prior to the March 11 deposition but counsel did not produce any of those documents to defendant until after the deposition (Raushenbush Exh.4 at 25-26, 196-197, 199). Defendant scheduled a second deposition. Tax records for Hudson's business were not produced until May 16. Income and expense records were not produced until May 27 (Eastly Decl. ¶¶ 7-8).

On July 2, Hudson's counsel produced to defendant 160 pages of receipts and tax records for his business. This was the on same day Hudson's second deposition was to take place. Defendant contends that counsel had those documents two weeks prior to July 2, but held them until "just hours" before the deposition was to start. Plaintiffs deny the allegation. Defendant canceled the deposition in order to review the documents (Raushenbush Exh. 4 at 224). The cancellation resulted in a $401 charge. Hudson was deposed for the second time on July 8.

Howard McConnell was deposed for the first time on March 3, 2008. McConnell is claiming that defendant caused him medical injury.

On October 1, 2007, defendant requested by email that McConnell provide defendant with a medical records authorization form. None was submitted. On November 19, McConnell objected to an interrogatory that requested he identify "each medical care provider that YOU

2

1 have seen since birth" (Raushenbush Decl. Exh 23 at 49). No medical care providers were
2 identified in response to the interrogatory.

3 In December, the parties agreed to a joint discovery plan that provided for the release of
4 medical records. Defendant received McConnell's medical records authorization form on
5 January 18. Counsel for plaintiff provided the name of one medical care provider (Exh. 26).
6 Defendant requested McConnell's medical records from the health care provider on February 1.

7 On February 21, Philip Gregory, counsel for plaintiff, requested from defendant a
8 change in the Court-set deposition date of March 3. Gregory made the request because he
9 "underst[ood] that the copy service still does not have a date by which it will have provided
10 counsel with copies of all of the subpoenaed records." Nothing in the record indicates
11 who hired the copy service. Gregory also made the request because of his travel schedule.
12 He proposed sixteen alternative dates in mid-to-late-March and early April. Defendant did not
13 stipulate to any of the dates (Wilson Decl. ¶¶ 3-4).

14 Defendant contends that the "majority" of McConnell's records were not received until
15 March 6, after the March 3 deposition. Defendant's records indicate that the February 1 request
16 yielded medical records, bills, and x-rays that were received on February 26. Another set of
17 x-rays was received on April 11. Defendant's records do not indicate that any of McConnell's
18 medical records were received on March 6 (Raushenbush Decl. Exh. 27).

19 At McConnell's March 3 deposition, the plaintiff identified medical care providers who
20 were not previously disclosed to defendant. He also stated that he had been treated by a doctor
21 for a gunshot wound. Defendant submitted requests for McConnell's medical records from
22 these medical care providers on March 6. Those records were received between March 12 and
23 April 11. McConnell was deposed for the second time on July 1.

24 Terance Supahan was deposed for the first time on March 5. Supahan is claiming
25 defendant created a trespass and nuisance on his property. Defendant had requested documents
26 regarding the size and value of his property on October 19, 2007. A 2007 appraisal of
27 Supahan's property was not produced to defendant until March 20, 2008 (Raushenbush Decl.
28 ¶ 46). Supahan was deposed for a second time on July 3.

1   Blythe Reis was deposed for the first time on March 6, 2008. Reis is claiming defendant
2   caused injury to her property and her cabin rental business. Defendant had requested Reis'
3   financial records on October 19, 2007. Only some of the responsive documents were produced
4   to defendant on March 4, 2008. Other responsive documents were produced on May 16, 2008,
5   and on June 11, 2008 (Raushenbush Decl. ¶¶ 49, 51–52). Reis was deposed for a second time
6   on July 7.

All of the second depositions were conducted in defendant's attorney's office in San Francisco. The first depositions were conducted in Eureka.

Defendant contends that plaintiffs should be required to pay all attorney's fees and costs associated with the second depositions of four plaintiffs because plaintiffs and/or their attorneys delayed in producing requested documents prior to the first depositions.

## ANALYSIS

### 1. LEGAL STANDARD.

"Imposition of discovery sanctions is committed to the trial court's discretion." *Marquis v. Chrysler Corp.*, 577 F. 2d 624, 642 (9th Cir. 1978). The court's inherent power is "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Chambers v. Nasco, Inc.*, 501 U.S. 32, 43 (1991). "The Court's inherent power to sanction is merely supplemented by the Rules of Civil Procedure and is no way restricted by sanctions provisions there in." *Mosaid Techs. Inc. v. Samsung Elecs. Co.*, 224 F.R.D. 595, 598 fn. 3 (D. N.J. 2004). When imposing attorney's fees as a discovery sanction, the court should exclude hours for attorney's fees that are "not reasonably expended by virtue of excessiveness, redundancy, or lack of necessity." *Id.* at 597. "Work that would have been done in any event is discounted." *Id.* at 599. The defendant as the moving party "bears the burden of demonstrating the reasonableness of its fees and hours." *Id.* at 596.

### 2. DEFENDANT'S MOTION FOR ATTORNEY'S FEES AND COSTS.

In order to break the logjam of finger-pointing over the lack of discovery progress, the Court stated on February 21 that if defendant was required to take second depositions because

4

plaintiffs did not timely produce responsive documents, plaintiffs would have to bear the incremental expense of the second depositions (Tr. 14–16.) The first issue is whether defendant was required to take second depositions of Hudson, McConnell, Supahan, and Reis by reason of an untimely production of documents. The second issue is whether the expenses asserted by defendant are reasonable.

### A. The Second Deposition of Michael Hudson.

Plaintiffs do not dispute that their counsel failed to produce some of Hudson's financial and tax documents before his March 11 deposition even though counsel was already in possession of those documents at the time of the deposition. Plaintiffs' untimely production of Hudson's financial and tax records caused defendant to take a second deposition of Hudson. Plaintiffs must pay any of defendant's expenses for the second deposition that would not have been incurred had it not been for the untimely production of documents.

Defendant, however, seeks to recover attorney's fees for work that would have been done whether or not plaintiffs timely produced documents. Defendant lists attorney hours for reviewing "newly-produced" documents but, without more, this is work that would have been done regardless of the untimely production. The only attorney's fees recoverable for the second deposition of Michael Hudson are the fees listed for "making final preparations for and taking Hudson's supplemental deposition."

Defendant also contends plaintiffs must pay the cancellation fee for the aborted July 2 deposition because counsel for plaintiffs withheld documents until the day of the deposition. The Court does not have to resolve the question of whether the lawyers had Hudson's business records prior to the scheduled deposition. They should have had those documents. Defendant should not bear the expense of having to cancel the July 2 deposition.

Plaintiffs must pay defendant $1,802 in attorney's fees and $1780.70 in costs. Plaintiffs must also pay the $401 cancellation fee.

### B. The Second Deposition of Howard McConnell.

Plaintiff should have produced the names of all medical providers prior to the first deposition. It was unreasonable to provide just the name of McConnell's current medical

5

1 provider. Defendant had to ask in the deposition for the names of other medical providers.

2 Defendant also had to ask about previous injuries, which yielded information about

3 McConnell's gunshot wound.

4 It was unreasonable for defendant to request that McConnell identify all medical

5 providers since "birth." But, it was also unreasonable for plaintiff to limit the identification

6 of doctors to just the current health care provider.

7 Plaintiffs must pay the costs and expenses of the second deposition. It is of no moment

8 that plaintiffs attempted to reach a stipulation to reschedule the March 3 deposition, or that

9 defendant received some of McConnell's medical records prior to the first deposition.

10 Defendant was not required to stipulate to a new date and, because plaintiffs withheld the names

11 of McConnell's other medical providers, defendant had to request more documents after the

12 first deposition and conduct a second deposition.

13 Plaintiffs must pay defendant $2,650 in attorney's fees for preparing for and taking the

14 second deposition, and $1215 for the cost of the deposition. Defendant contends that plaintiffs

15 must pay its attorney's fees for "reviewing portions of Mr. McConnell's prior deposition

16 transcript," but defendant has not itemized the time and expense for that task. Attorney's fees

17 cannot be awarded without itemizing the particular task. All other attorney's fees defendant

18 contends plaintiffs must pay are for work that would have been done regardless of the untimely

19 production of documents and cannot be awarded.

20       **C.  The Second Deposition of Terance Supahan.**

21 Plaintiffs do not dispute that defendant requested documents that describe the location,

22 size, and value of Supahan's property on October 19, 2007, and that the documents were

23 not produced until March 20. Nor do plaintiffs provide an explanation for their delay.

24 Plaintiffs' untimely production of such documents required defendant to take a second

25 deposition of Supahan.

26 Defendant contends plaintiffs must pay $4,028 in attorney's fees for the work of

27 Matthew Helton, an associate at Latham & Watkins. It is unclear, however, in defendant's

28 papers what portion of Mr. Helton's work would not have been done had it not been for the

6

untimely production of Mr. Supahan's 2007 appraisal. Defendant lists "7.6 hours at a rate of $530 per hour reviewing Supahan's Uniform Residential Appraisal Report, choosing which prior exhibits require supplemental examination in light of the Appraisal, and drafting an outline for the deposition." The only work that would not have been done had it not been for the untimely production of documents is "choosing which prior exhibits require supplemental examination in light of the Appraisal." Defendant has not itemized the time and expense for that task. Attorney's fees cannot be awarded without itemizing the particular task.

Defendant also contends that plaintiffs must pay $2,809 in attorney's fees for the work of Karl Lytz, a partner at Latham & Watkins. It is unclear, however, what portion of Mr. Lytz' work would not have been done had it not been for the untimely production of documents. Defendant lists "5.3 hours at a rate of $530 per hour reviewing Supahan's new document production, reviewing portions of Supahan's prior deposition transcript and discovery responses related to his property, and reviewing the questions prepared by Mr. Helton for the deposition." The only work that would not have been done had it not been for the untimely production of documents is "reviewing portions of Supahan's prior deposition transcript and discovery responses related to his property." Defendant has not itemized the time and expense for these tasks. Attorney's fees cannot be awarded without itemizing the particular task.

Plaintiff must pay defendant $795 in attorney's fees for taking the second deposition and $1202.70 in costs.

### D.     The Second Deposition of Blythe Reis

Plaintiffs do not dispute that Blythe Reis' financial records were not produced in time for her March 6 deposition. Those documents as mentioned earlier were requested on October 19, 2007. Some of the documents were produced on March 4. Other responsive documents were produced on May 16 and on June 11. Plaintiffs' untimely production of documents caused defendant to take a second deposition of Reis.

Defendant contends it is entitled to $841.50 in attorney's fees for the work of Patrick Ferguson, an associate at Latham & Watkins. Ferguson spent 1.7 hours "reviewing Reis' income statements, choosing specific records to ask Reis about, and preparing part of an outline

7

1  for examination at the deposition." These fees are not recoverable because this is work that
2  would have been done in any event.

3        Defendant also contends that it is entitled to $3,127 in attorney's fees for the work of
4  Matthew Helton, an associate at Latham & Watkins. Helton spent 5.9 hours "reviewing Reis'
5  cash flow reports and tax returns, choosing specific records to ask Reis about, and preparing
6  part of an outline for examination at the deposition." These fees are not recoverable because
7  this is work that would have been done in any event.

8        Defendant also contends it is entitled to $2,279 in attorney's fees for the work of Karl
9  Lytz. He spent 4.3 hours "reviewing Reis' new document production, reviewing portions of
10  Reis' prior deposition transcript and discovery responses related to her business and property,
11  and reviewing the questions prepared by Mr. Ferguson and Mr. Helton for the deposition."
12  The only work that would not have been done had it not been for the untimely production of
13  documents is "reviewing portions of Reis' prior deposition transcript and discovery responses
14  related to her business and property and reviewing the questions prepared by Mr. Ferguson and
15  Mr. Helton for the deposition." Defendant has not itemized the time and expense for these
16  tasks. Attorney's fees cannot be awarded without itemizing the particular task.

17        Plaintiff must pay attorney's fees for taking of Reis' second deposition, $689, and the
18  costs of the deposition, $1209.50.

19        **3.**     **LOCAL RULE 37-3.**

20        Plaintiffs argue that defendant's motion for costs and attorney's fees should fail because
21  it does not comply with Local Rule 37-3. Defendant rightly asserts that Local Rule 37-3
22  applies only to motions for sanctions brought under Rule 37. This motion was not brought
23  under Rule 37 and, therefore, Local Rule 37-3 does not apply. Because the Court finds that
24  this motion was properly brought under the express authorization of this Court, defendant was
25  not required to bring its motion under Rule 37. Accordingly, the Court does not need to address
26  plaintiffs' arguments under Local Rule 37-3.

8

### 4. REASONABLENESS OF ATTORNEY'S FEES.

Because Local Rule 37-3 is inapplicable to the instant motion, plaintiffs' argument that defendant's motion should be denied because defendant has not "set forth an appropriate justification for any attorney-fee hourly rate claimed" under Local Rule 37-3 fails. Plaintiffs urge the Court to use its discretion in determining what amount, if any, should be awarded to defendant, citing *General Signal Corp. v. Donallco*, 787 F. 2d 1376, 1380 (9th Cir. 1986). *General Signal Corp*., however, only addresses the issue of whether attorney's fees should be awarded in order to recover the cost of filing an action for civil contempt. Here, no such motion was filed. *General Signal Corp.* is inapposite.

Defendant argues that its attorney-fee hourly rates are reasonable because Pacificorp chose to pay Latham & Watkins a unitary rate for its services, rather than a separate, lower rate for junior associates, and a separate, higher rate for partners. Defendant also argues that its attorney-fee hourly rates are reasonable because Latham's rates are within the range of what other law firms in California charge and have been awarded. Plaintiffs offer no evidence to the contrary.

Because "[i]mposition of discovery sanctions is committed to the trial court's discretion" *Marquis* (577 F.2d at 642), and the Court finds that defendant "demonstrat[ed] the reasonableness of its fees and hours" (*Mosaid Techs. Inc.*, 224 F.R.D. at 596), the Court is not compelled to reduce defendant's hourly rates for attorney's fees.

### 5. SUPPLEMENTAL ORDER TO ORDER SETTING INITIAL CASE MANAGEMENT CONFERENCE, ¶ 19.

Plaintiffs argue that paragraph 19 of the supplemental order to order setting initial case management conference is inapplicable to defendant's claim for costs and attorney's fees associated with the second depositions. Because this order finds that defendant is eligible for cost and attorney's fees based on the express statements of this Court at the February 21 hearing, it is not necessary to address plaintiffs' argument that paragraph 19 is inapplicable.

### 6. MOTION IS BEFORE THE PROPER COURT.

Plaintiffs argue that defendant's motion should be denied because it should have been brought before Magistrate Judge James Larson, not here. While this Court did refer all

9

discovery disputes to Magistrate Judge Larson on February 21, the Court in no way indicated that it would not enforce its own orders to proceed with depositions on threat of sanctions for further delays in document production. Plaintiffs' argument fails.

**7. ACCURACY OF ATTORNEY'S FEES.**

Plaintiffs argue that the motion for costs and attorney's fees should be denied because defendant's motion contained inaccuracies in its computation of attorney's fees. Defendant corrected these inaccuracies in its reply brief and stated in a declaration that the errors were inadvertent. Plaintiffs' argument that the initial inaccuracies are grounds for denial does not prevail.

**CONCLUSION**

For the foregoing reasons, defendant's motion for costs and attorney's fees associated with the plaintiffs' second depositions is **GRANTED IN PART**:

1. In association with the second deposition of Michael Hudson, plaintiffs must pay $1,802 in attorney's fees and $1780.70 in costs. Plaintiffs must also pay the $401 cancellation fee for aborted July 2 deposition.

2. In association with the second deposition of Howard McConnell, plaintiffs must pay defendant's $2,650 in attorney's fees and $1215 in costs.

3. In association with the second deposition of Terance Supahan, plaintiffs must pay defendant $795 in attorney's fees and $1202.70 in costs.

4. In association with the second deposition of Blythe Reis plaintiffs must pay $689 in attorney's fees and $1209.50 in costs.

5 All other motions for attorney's fees and costs associate with the second depositions of plaintiffs are **DENIED**.

**IT IS SO ORDERED.**

Dated: September 12, 2008.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

10